FILED
04/18/2024
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

BRIAN K. MARSHALL, )
)
    Plaintiff, )
)
v. ) Civil Action No. 2:24-cv-00140-JPB-MKK
)
Warden J. Wadas, )
)
    Respondent, )
)
and )
)
Federal Bureau of Prisons, )
)
and )
)
United States of America, )
)
and )
)
Unknown John Does 1 - 2, )
)
and )
)
Unknown Jane Doe 1, )
)
    DEFENDANTS. )
_____)

COMPLAINT

I. JURISDICTION AND VENUE

1. The Court has jurisdiction under 28 U.S.C. § 1331, 1346(b)(2); the Eighth Amendment to the United States Constitution; and the Federal Tort Claims Act.

2. On May 16, 2023 date, Plaintiff submitted an Administrative Claim on Form 95, Claim for Damage, Injury, or Death, to the United States Bureau of Prisons, Department of Justice. This claim was

denied on December 19, 2023 date. Sent Cert. Mail No. 9587 0710 5270 1235 7004 27. Claim No. TRT-NCR-2023-08557.

II. PARTIES

3. Plaintiff, Brian K. Marshall, Reg. No. 15188-010, is a federal prisoner who is incarcerated in the Federal Correctional Institution, Communication Management Unit ("CMU")("F.C.I. Terre Haute") aka D-UNIT, 4700 Bureau Road North, Terre Haute, IN 47802.

4. Respondent J. Wadas d/b/a FCI Terre Haute Warden is being sued under his official capacity as means to facilitate prisoner's discovery of identities of parties who may have violated his rights (unknown John Does and Jane Doe) resides at FCI, 4700 Bureau Road North, Terre Haute, IN 47802.

5. Defendant Federal Bureau of Prisons ("BOP") is sued under the Federal Tort Claims Act, under its official capacity for assault and battery, negligence and gross negligence; deliberate indifference to Medical needs by law enforcement officers (herein B.O.P. officer staff), employees at all relevant times of the United States Federal Correctional Institution Terre Haute, IN, Department of Justice, an agency of the United States of America.

6. Defendant United States of America is sued under the Federal Tort Claims Act for assault and battery, negligence and gross negligence and deliberate indifference to Medical needs by B.O.P. officer staff, of the Federal Correctional Institution (Communication Management Unit) Terre Haute, Indiana, Department of Justice, an agency of the

United States of America. This Defendant is sued in its official capacity.

7. Defendant Unknown "John Doe 1" was at all relevant times, an employee and officer of the United States Federal Bureau of Prisons, Department of Justice, an agency of the United States of America, located at 4700 Bureau Road North, Terre Haute, IN 47802. This Defendant is sued in his individual and official capacity as a tortfeasor.

8. Defendant Unknown "John Doe 2" was at all relevant times, an employee and officer of the United States Federal Bureau of Prisons, Department of Justice, an agency of the United States of America, located at 4700 Bureau Road North, Terre Haute, Indiana 47802. This Defendant is sued in his individual and official capacity as a tortfeasor.

9. Defendant Unknown "Jane Doe," was at all relevant times, an employee and lieutenant officer of the Terre Haute, United States Federal Bureau of Prisons, Department of Justice, an agency of the United States of America, located at 4700 Bureau Road North, Terre Haute, IN 47802. This Defendant is sued in her individual and official capacity as a tortfeasor.

III. FACTS

10. On May 5, 2023, at approximately 17:15 hrs p.m. Plaintiff, Brian Kirk Marshall, Reg. No. 15188-010, standing in front of his assigned cell, D-Unit No. 16, (CMU) Communication Management Unit, when approximately over (14) Federal Bureau of Prisons staff/officers

ran into the Unit in response to Officer Emmerson's distress call button on his radio being pressed allegedly. This included Unknown Defendants John Doe #1 and #2, and Jane Doe among the group.

11. The Communications Management Unit (CMU) a.k.a. D-Unit, is a separate segregated general population unit, not considered a part of the Federal Correctional Institution (F.C.I.) Terre Haute, as those housed within this Unit have no contact with the general compound. It is a high surveillance unit where there are cameras and audio listening devices, with (24) hour live monitoring. In order to gain access into D-Unit, an officer in the unit monitoring tower would have to press a button to unlock the security gate for entry or departure.

12. Officer Emmerson, allegedly was scheduled to be working in D-Unit, when his alarm button on his radio was allegedly pressed. This caused for an alert to be transmitted, which signal from Emmerson's radio caused for a response team of BOP staff officers to run to his aid. This was the only cause for the Defendants, with numerous of others, unknown BOP officers, to descend upon D-Unit, thinking that either Officer Emmerson was in need of support or that a fight between inmates was in progress. However, Officer Emmerson was not working in D-Unit on this specific day but in fact was working at another location within the F.C.I. Terre Haute Complex Facility. The alleged shortage of BOP staff officers and omissions caused by the failure to correct or change Officer Emmerson's work schedule location by those in the administration department, is the result

of a continuous problem of lack of communication among FCI Terre Haute's staff and management. The breakdown and failure of the administration is a part of the reason and cause that led to the incident and the injuries sustained upon Plaintiff through their negligence and by the omissions of its officers in the course of their act of duty.

13. When BOP staff arrived at D-Unit the officer in the tower had to press a button to allow the unit security gate door to be opened, where then the response team made up of BOP staff ran into D-Unit. Among this team of BOP officers were Defendants Unknown John Doe #1, Unknown John Doe #2, and Unknown Lieutenant Jane Doe, which Plaintiff will have to rely on the (CMU's) surveillance cameras in front of his cell room No. 16 to identify each Defendant and other parties responsible.

14. During this time, there was no one in D-Unit, not the assigned working BOP staff Officer P. Johnson, who at this time was in D-Unit's (SHU) Special Housing Unit, doing his 30 minute rounds, nor BOP's Officer R. Russell aware of any incident concerning Officer Emmerson. This also included the inmate population in D-Unit. In fact, D-Unit was completely irrelevant to the distress radio call and/or response.

15. Because Plaintiff Brian K. Marshall is diagnosed with, but not treated for, serious psychiatric conditions, he was knowingly placed by the agency in the C.M.U., where it knew he would receive no meaningful psychiatric care and struggle to attend to the needs of

daily life unassisted.

16. Discovery and depositions will prove that the agency had, and has a long history of, sending similarly situated psychiatric patients and likely psychiatric patients to the C.M.U. in Terre Haute and its sister unit, the U.S.P. Marion, Illinois, I-Unit C.M.U. nearby.

17. Discovery and depositions will further prove that the agency provides no special training to the staffers who interact with C.M.U. prisoners who are psychiatric patients, despite the agency's deliberate choice to concentrate psychiatric patients in the C.M.U.'s.

18. Discovery and depositions will further prove that psychiatric patients and likely psychiatric patients placed in the C.M.U.'s have a history of suicidal, homicidal and otherwise dangerous conduct, e.g., 1) in November 2018 a psychiatric patient or likely psychiatric patient, here unnamed, garroted and stabbed to death another prisoner and severely injured another, stopping only when another prisoner -- not a staffer -- interceded to stop the violence, and 2) in 2020 or 2021 a psychiatric patient named Michael D'Angelo who had been denied adequate care in the Terre Haute C.M.U. cut himself open in his cell, leaving a grisley spectacle of blood. Only then was he moved to an appropriate facility.

19. Discovery and depositions will further prove that the agency at all relevant times knew or should have known that Claimant's physical and psychiatric condition placed Claimant at unacceptable risk of mistreatment by its untrained staffers at the F.C.I. Terre Haute.

20. Discovery and depositions will further prove that the agency at all relevant times knew or should have known that the specialized, punitive conditions of the C.M.U.'s posed, and pose, serious, unacceptible risks to exacerbate Claimant's physical and psychiatric issues. See, e.g., Aref v. Lynch, 833 F.3d 242, 257 (D.C. Cir. 2016) ("Inmates housed in CMU's [...] may spend years denied contact with their loved ones [...]. The harms of these deprivations are heightened over time, as children grow older and relationships with the outside become more difficult to maintain.") (citing Wilkerson v. Stalder, 639 F.Supp.2d 654, 684 (M.D. La 2007) ("With each passing day its effects are exponentially increased, just as surely as a single drop of water repeated endlessly will eventually bore through the hardest of stones.")).

21. Shortly after the BOP's officers came into the unit they ran past Plaintiff standing in front of his cell No. 16 and were stopped by the locked gate leading to the C.M.U.'s D-Unit's Special Housing Unit (S.H.U.). The Unit Officer, which Plaintiff believes to be in the S.H.U. at this time tending to his 30 minute rounds for which the S.H.U. gate was temporarily locked for that purpose, was D-Unit Officer P. Johnson, who was also not aware of any distress call of Officer Emmerson nor the reason for the support team of BOP's officers to descend to the Unit.

22. Plaintiff Brian K. Marshall whose daily regimen consists of being highly medicated with various number of prescriptions including psychiatrics, started to laugh at the confusion of the officers as

they all ran into each other, looking like a cartoon skit to him, when Unknown Officers John Doe 1 and John Doe 2 both turned towards Plaintiff shouting at him to go to his cell.

23. Unbeknownst to John Doe 1 and John Doe 2, Plaintiff was already at his assigned cell No. 16, which he barely moves away from unless it's time to eat or shower, when both of these Defendants suddenly, without cause nor warning, ran up to Plaintiff and attacked him. They began hitting him in the head and ribs, throwing him onto the ground in front of his assigned cell No. 16. Unknown Defendant John Doe 1, grabbed Plaintiff, thrusting his face down towards the ground, planting his knee on the back of his neck while Defendant Unknown John Doe 2 grabbed Plaintiff's left arm, pulling Plaintiff's hands behind his back and tugged and pulled until a pop and snap was heard of the breaking and dislocation of his left arm.

24. Plaintiff suddenly screamed and repeated the phrase "George Floyd, George Floyd," causing both Defendants, Unknown John Doe 1 and John Doe 2, to immediately relinquish their unprovoked attack of "assault and battery," following one of the Unknown Defendants to grab the Plaintiff by his injured left arm, lifting him from off the ground and leading him to the S.H.U. back side door entrance, located still in the C.M.U., D-Unit.

25. There were around or about ten (10) additional B.O.P. officers along with another Unknown Defendant Jane Doe, acting lieutenant, who was not only present and observed the unjustifide assault and battery on Plaintiff by both Defendants Unknown John Doe 1 and John Doe 2,

but no one made any effort to stop or intervene in accordance to their obligation of duty of care to the Plaintiff's well being and protection, nor in accordance to established B.O.P. policy, in violation of its use of excessive force relating to the assault and battery.

26. Plaintiff contends that he gave no reasonable grounds to believe that he presented an immediate, serious threat of hurting himself, staff or others. Staff failed to review Plaintiff's medical file to understand his diagnosed medical conditions and mental impairment. Staff further neglected to use common sense and good correctional judgment in this incident to determine whether the situation that was presented allowed for the implementation of calculated or immediate use of force procedures. The actions of Defendants violated Program Statement P5566.06 CN-1 8/29/14 "USE OF FORCE AND APPLICATION OF RESTRAINTS." It was easily ascertained by and through situational awareness, observation, and tactical assessment that they were obviously responding to a false alarm and that Plaintiff was not a threat or concern.

27. The Federal Bureau of Prisons authorizes staff to use force only as a last alternative after all other reasonable efforts to resolve a situation have failed. See Title 28 CFR § 552.20.

28. Plaintiff was owed a duty of care by the Bureau of Prisons under Title 18 U.S.C. § 4042 for his safekeeping and protection as an inmate; and that what injuries he suffered were caused by B.O.P.'s failure to uphold that duty through its employees.

29. Plaintiff was taken to the C.M.U.'s D-Unit's Special Housing Unit (S.H.U.) where the response team of BOP's staff members were present. An unknown staff member held a camcorder, which was being used to record the event and Plaintiff's head and arm injuries that he suffered from the Defendants failure to uphold their duty.

30. One of the Unknown Defendants, John Doe 2, the officer with the dark brown hair, questioned Plaintiff while being recorded. Plaintiff was asked by this Defendant, "What was he doing? And why didn't he go to his cell?" Plaintiff Brian K. Marshall stated: "He was told to go to his cell and that he was already at his cell." Unknown Defendant Lieutenant Jane Doe stated to Plaintiff: "That he should have gone into his cell as (he) should know what it means." Plaintiff replied: "How was he supposed to know as he was already at his cell?"

31. Later, after the response team left, D-Unit Officer R. Russell or P. Johnson, stripped Plaintiff out and placed him in SHU cell #8.

32. Plaintiff Brian K. Marshall complained to D-Unit staff that his left arm was in pain along with his head from the attack from the Unknown Defendants John Doe 1 and John Doe 2.

33. Staff and the Defendants who witnessed or actually were involved in the use of excessive force, failed to either report Plaintiff's injuries intentionally or neglected their duties owed to Plaintiff whose safekeeping and protection was violated by not having medical staff treat or do a physical checkup following the incident of "assault and battery" in use of force procedures.

34. The Plaintiff was placed in the C.M.U., D-Unit's S.H.U. on Friday, May 5, 2023 in which he did not see any medical staff until Tuesday, May 9, 2023, (4) four days later. Plaintiff, even though he complained to those involved in the incident and those staff actually working in D-Unit that his left arm was hurting and that he could see, or in fact anyone else could also tell that both sides of his left arm was swollen three times its size.

35. The Defendants Unknown Jane Doe along with John Doe #1 and John Doe #2 and other unknown at this time Defendants present on May 5, 2023 were grossly negligent as they all lacked their general duty to use reasonable care to prevent injuries to Plaintiff's person. Plaintiff had the right to be free from offensive bodily contact that was intentionally inflicted upon him. Because use of force took place staff knowingly, willfully or at least recklessly caused deprivation of medical treatment by their failure to act. In accordance to policy P5566.06 "USE OF FORCE AND APPLICATION OF RESTRAINTS @ section 12:

    > "If any staff involved in a use of force reports an injury, Health Services personnel should provide an immediate examination and initial emergency treatment as required." See also Title 28 CFR § 552.26, "Medical attention in use of force and application of restraints incidents":

    > (b) After any use of force or forcible application of restraints, the inmate shall be examined by qualified health personnel and any injuries noted, immediately treated.

    This amounted to deliberate indifference to Plaintiff's medical needs. It could also easily be construed as evidence tampering and obstruction with fraudulent intent to corrupt the record.

36. On Tuesday, May 9, 2023, F.C.I.'s Terre Haute Medical staff X-rayed Plaintiff's left arm and found that it was, in fact, dislocated at the elbow and had (3) three fractures. Due to the amount of time that had passed, when medical tried to reset Plaintiff's left arm at the elbow, the nurse was unable to and caused further damage, which led to the Plaintiff being rushed to the hospital due to the gross negligence and deliberate indifference to Plaintiff's medical needs.

37. Upon arrival of the Plaintiff at Union Hospital Terre Haute, 1606 North 7th Street, Terre Haute, IN 47804, he was X-rayed again, which affirmed that his left arm had several fractures and was dislocated at the elbow. Plaintiff was prepped and immediately rushed into surgery. The physician who treated Plaintiff was infuriated as to the lack of care towards Plaintiff by the passing of (4) four days allowed before he was seen. Because of the (4) four days of delay, it caused for the rebreaking of Plaintiff's left arm to reset the dislocation of the elbow properly. Plaintiff remained at the hospital for several days and underwent (3) three additional surgical operations.

38. The surgeon treating Plaintiff was going to place metal rods, pins and screws in his left arm and elbow. But, because the accompanied security guard who was appointed by the B.O.P. to stay with the Plaintiff, stated since Plaintiff is still in prison, he could only receive plastic, which the surgeon replied that the Plaintiff would later have to replace the plastic rods, etc. for metal. Wherefore, Plaintiff will be subjected to more future surgeries and more pain

and suffering extending from the May 5, 2023 incident and lack of medical care owed to him by the Defendants, medical staff, and others. Plaintiff will have permanent disability in his use of his left arm, which will not only diminish his ability to work but ability to take care of his day to day needs in prison (e.g. cleaning, washing or lifting objects).

39. Plaintiff was released back to the B.O.P. and continued to receive followups, concerning his arm injury, but he still suffers from a yet unevaluated head trauma, likely excerbating existing traumatic brain injuries (T.B.I.).

40. From the injuries suffered, B.O.P. medical F.C.I. Terre Haute denies Plaintiff meaningful pain medication, prescribing him ibuprofen for his broken arm and head injuries.

41. Plaintiff continues to suffer emotional abuse and damages from aforesaid physical injuries. The Unites States through its agencies the BOP and its employees' response to Plaintiff's above injuries have thus so far been wholly inadequate, e.g. though Plaintiff remains under Court-ordered medication he receives no residential treatment and inadequate other psychiatric treatment.

42. Plaintiff lives in continued fear of further abuses or outright reprisals. Because claimant cannot read nor write well due to his mental impairment, he sought assistance from another resident who resides in D-Unit (C.M.U.). He further was told by a staff member that if he filed this civil action, that he would be placed in the (S.H.U.). This would be retaliation for exercising his right to

"access the courts" in order to redress a grievance protected by the First Amendment, and of his right to be free of "cruel and unusual punishment" protected by the Eighth Amendment.

43. The officers intentionally harmed Plaintiff. Throughout the whole incident, Plaintiff never fought back at all and never made any threatening or intimidating gestures. Yet the guards first swung at him, then knocked him down on the floor. Even assuming that up until that point a certain degree of confusion may have existed, at that point Plaintiff was reasonably subdued, and this would have been immediately apparent to the officers -- they were sitting right on top of him for one thing. From this point on, the very actions of the guards necessarily demonstrated intent. Having thus subdued Plaintiff, and therefore knowing no further force was necessary, the officers now twisted and pulled on his arm up until they felt it break, and even then they still did not stop until Plaintiff started screaming "George Floyd, George Floyd!" That was sadistic and wholly unnecessary, and not only did the officers disregard the consequences of their actions, but also they plainly intended them. This was excessive use of force.

## COUNT 1

44. The actions of Unknown John Doe #1 and John Doe #2, whereupon discovery will identify both of their true identies as the Defendants set forth in paragraphs 9 - 43, constitute assault and battery in violation of Indiana state common law. Under the Federal Tort Claims

Act, the Defendant, the United States of America through its Federal Bureau of Prisons (B.O.P.) agency, is liable to the Plaintiff for the unlawful actions of Unknown Defendant John Doe #1 and Unknown Defendant John Doe #2, as both were acting within the scope of their employment as the law enforcement provision applies to all law enforcement officers, including employees of the Bureau of Prisons. See Millbrook v. Gov't, 569 U.S. 50, 55, 133 S.Ct. 1441, 185 L.Ed.2d 531 (2013). Under Indiana law, "[i]f an officer uses unnecessary or excessive force, the officer may commit the tort of assault and battery." Wilson v. Isaac, 929 N.E.2d 200, 203 (Ind. 2010) (liable only if guard acted recklessly or with reckless disregard of the consequences). Under the Federal Tort Claims Act, the Defendant United States of America is liable to the Plaintiff for the unlawful action.

## COUNT 2

45. The action of both Unknown John Doe #1 and Unknown John Doe #2 as Defendants set forth in paragraphs 9 - 43 constitute negligence in violation of Indiana state common law. The Supreme Court held that the FTCA allows for tort suits against the United States for personal injuries sustained during confinement by an inmate in a federal prison by reason of negligence of government employees. See United States v. Muniz, 374 U.S. 150, 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); see also Parrott v. United States, 536 F.3d 629, 637 (7th Cir. 2008). Under the Federal Tort Claims Act, the Defendant United States of America is liable to the Plaintiff for

the unlawful action where Plaintiff was injured and continues the effect of suffering pain and emotional distress from their cause of action.

## COUNT 3

46. The actions of the lieutenant Unknown Jane Doe as set forth in paragraphs 9 - 43 constitute gross negligence in violation of Indiana common law. The lieutenant Unknown Jane Doe had a duty to the Plaintiff as an employee of the Bureau of Prisons under Title 18 U.S.C. § 4042 for his safekeeping and protection where by her failure to control and take lead of her subordinates Defendants unknown at this time; John Doe #1 and John Doe #2, whose use of unnecessary force was in breach of B.O.P. policy Program Statement P5566.06 CN-1. This caused for Plaintiff's left arm to be fractured at several places and dislocation of the elbow, leading to a multitude of surgeries and subjected Plaintiff to pain and injury for more than 1 year which continue without resolve. Under the Federal Tort Claims Act, the Defendant United Staes of America is liable to the Plaintiff for the unlawful action.

## COUNT 4

47. The actions of the lieutenant, Unknown Jane Doe, was in breach of her duty when failing to follow BOP's policy P5566.06 CN-1 "USE OF FORCE" in the aforesaid paragraphs 9 - 43 by allowing John Doe #1 and John Doe #2 to assault and batter Plaintiff, which he was hit in the head and ribs, breaking Plaintiff's left arm and dislocating his elbow in a manner serious enough to cause multiple surgeries

causing Plaintiff, not only injury, but pain and suffering. This breach of duty constitutes negligence in violation of Indiana state common law and was the direct and proximate cause of the Plaintiff's pain, suffering and injury. Under the Federal Tort Claims Act, the Defendant United States of America is liable to the Plaintiff for the unlawful action.

## COUNT FIVE

48. Both the action of John Doe #1 and John Doe #2 and other unknown at this time Defendants set forth in paragraphs 9 - 43 constitute gross negligence in violation of Indiana state common law. Whereas Title 18 U.S.C. § 4042 both BOP officers and other unknown defendants present, had a duty to Plaintiff for his safekeeping and protection which was violated by the unnecessary use of force. See Program Statement P5566.06 CN-1. This gross negligence caused for use of unnecessary force against Plaintiff to cause his injury, pain and emotional suffering. Under the Federal Tort Claims Act, the Defendant United States of America is liable to the Plaintiff for the unlawful action.

## COUNT SIX

49. Unknown Defendants John Does 1 - 2, Jane Doe, Medical staff and others unknown at this time but will be added upon discovery to identify their true identities, as to the action set forth in paragraphs 9 - 43, constitutes a claim of deliberate indifference to Plaintiff's medical needs. As the Seventh Circuit has held that a guard who

uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise." See Cooper v. Casey, 97 F.3d 914, 917 (7th Cir. 1996). Under the Federal Tort Claims Act, the Defendant United States of America is liable to the Plaintiff for the unlawful action of Unknown John Doe 1 and 2, Jane Doe, and Medical staff as they were acting within the scope of his employment as a B.O.P. employee of the United States F.B.O.P. agency of the Department of Justice.

## BIVENS CLAIM

50. The action of both Defendants John Doe #1 and John Doe #2, set forth in paragraphs 22 - 27; 43 violated Plaintiff's right to be free of "Cruel and Unusual Punishment" under the Eighth Amendment to the U.S. Constitution. Defendants John Doe #1 and John Doe #2 are liable to the Plaintiff for those unlawful actions in violation of the Constitution for unnecessary and excessive force causing injury.

## PRAYER FOR RELIEF

A. On the claims stated in paragraphs 44 - 49, the Plaintiff asks the Court to enter judgment against Defendant United States of America through its agency Bureau of Prisons (F.B.O.P.).

B. On the claims stated in paragraphs 44 - 49, the Plaintiff asks the Court to enter judgment against Defendants United States of America through its agency Bureau of Prisons (F.B.O.P.) is liable to the Plaintiff for compensation, damages for the requested sum $2,500,004.00.

C. On the claim stated in paragraphs 44 - 45; 48 - 49 the Plaintiff asks the Court to enter judgment against Defendant Officers John Doe #1 and John Doe #2.

D. On the claim stated in paragraph 49 the Plaintiff asks the Court to enter judgment against Defendant Unknown medical staff.

E. For the injuries that the Plaintiff suffered as a result of the claims stated in paragraphs 44 - 49 the Plaintiff asks the Court to hold Defendants United States of America through its Bureau of Prisons agency and its officers John Doe #1, John Doe #2, and Jane Doe jointly and severally liable for compensatory damages in the amount of $2,500,004.00 and the costs of this action.

F. For the claims stated in paragraph 50, the Plaintiff asks the Court to hold Defendants John Doe #1 and John Doe #2 further liable for punitive damages.

G. On the claim stated in paragraph 50 the Plaintiff asks the Court to enter judgment against Defendants John Doe #1 and John Doe #2 for emotional injury suffered.

## JURY DEMAND

Plaintiff demands a jury trial of his constitutional claims against Defendant John Doe #1 and John Doe #2 once they are properly identified through discovery.

I, Brian K. Marshall, the Plaintiff, declare under penalty of perjury that the foregoing is true and correct to the best of my abilities.

Dated 4-11-24                               /s/ B. Marshall
                                            Brian K. Marshall