UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRIAN K. MARSHALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:24-cv-00140-JPH-MKK |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING LT. CHEATHAM'S MOTION TO DISMISS
AND GRANTING PLAINTIFF'S MOTION FOR COUNSEL**

Plaintiff Brian Marshall is a prisoner currently incarcerated at the U.S. Penitentiary in Coleman, Florida. He alleges in this civil action that Lt. Cheatham was deliberately indifferent to his pain after he was subjected to excessive force while he was incarcerated at the Federal Correctional Institution in Terre Haute, Indiana ("FCI-Terre Haute"). The Court screened Mr. Marshall's complaint and allowed his claim against Lt. Cheatham to proceed pursuant to the theory recognized in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).[1] Dkt. 17. The Court also allowed a FTCA claim to proceed against the United States of America under a theory of negligence and assault and battery under Indiana law. *Id.*

---

[1] The Court did not allow Mr. Marshall's excessive force and failure to intervene claims to proceed against any individual defendant as it found they would present a new context under *Bivens*. Dkt. 17 at 5–7. The Court therefore will not address the Defendant's arguments as they relate to the excessive force, failure to intervene, or "bystander" claims, none of which are proceeding in this action.

1

Lt. Cheatham has moved to dismiss Mr. Marshall's *Bivens* claim because it presents a new context under *Bivens*. Dkt. 30. Mr. Marshall did not respond to the motion. For the reasons below, Lt. Cheatham's motion to dismiss, dkt. [30], is **denied**. Further, Mr. Marshall's motion for assistance recruiting counsel, dkt. [37], and motion for case status, dkt. [38], are **granted**.

## I.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When ruling on a 12(b)(6) motion, the Court will "accept the well-pleaded facts in the complaint as true" but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

## II.    Factual Background

Consistent with the standards above, the Court treats the factual allegations contained in Mr. Marshall's complaint as true for purposes of this Order. At approximately 5:15 pm on May 5, 2023, Mr. Marshall was standing outside of his cell at FCI-Terre Haute when multiple Bureau of Prisons ("BOP") officers, including Lt. Cheatham, responded to a distress call in his housing unit. Dkt. 12 at 2–3. Upon entering the housing unit, unknown officers ran up to him and attacked him by hitting his head and ribs, throwing him on the ground,

putting a knee on his neck, and pulling his left arm. *Id.* at 5. Lt. Cheatham was the acting lieutenant and was present to observe the assault. *Id.*

Mr. Marshall was taken to the special housing unit ("SHU"). *Id.* at 6. Mr. Marshall complained to "D-Unit staff" that his left arm and head were in pain. *Id.* Mr. Marshall alleges that Lt. Cheatham and other staff were deliberately indifferent to his medical needs because they did not give "prompt attention" to his medical need after the use of excessive force. *Id.* at 9–10. Mr. Marshall was seen by medical staff four days after the incident. *Id.* at 6. His complaint seeks compensatory and punitive damages. *Id.* at 10–11.

### III.    Discussion

### A. Applicable Law

There is no congressional authority to award damages against federal officials who violate the Constitution while acting under color of federal law. *Ziglar v. Abbasi*, 582 U.S. 120 (2017). Over fifty years ago, the Supreme Court held in *Bivens* that it had authority to create "a cause of action under the Fourth Amendment" against federal narcotics officers who allegedly handcuffed the plaintiff and threatened his family while arresting him. 403 U.S. at 397. That implied authority was subsequently extended twice: first to a former congressional staffer alleging sex discrimination in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249 (1979), and second to the estate of a federal prisoner alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment where prison staff failed to provide him medical attention for an asthma attack for many hours, resulting in his

death, *Carlson v. Green*, 446 U.S. 14, 16, n.1, 24 (1980). But these "three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 582 U.S. at 131.

In the past four decades, the Court has declined to create any new contexts for *Bivens* claims. *Egbert v. Boule*, 596 U.S. 482, 486 (2002) (listing cases). "[E]xpanding *Bivens* is not just 'a disfavored judicial activity,' *id.* at 491 (quoting *Ziglar*, 582 U.S. at 131), it is an action that is impermissible in virtually all circumstances." *Silva v. United States*, 45 F.4th 1134, 1130 (10th Cir. 2022).

To determine whether a *Bivens* remedy is available to a plaintiff suing a federal actor, the Court conducts a two-step inquiry. First, it asks whether the claim presents a new *Bivens* context by determining whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Ziglar*, 582 U.S. at 139. If the claim does not present a new context, it can proceed. *Watkins v. Moran*, 144 F.4th 926, 933 (7th Cir. 2025); *Brooks v. Richardson*, 131 F.4th 613, 615 (7th Cir. 2025) ("Although its current approach apparently rules out novel extra-statutory claims, the Court has not overruled *Bivens*, *Davis*, or *Carlson*.").

Second, if the claim presents a new *Bivens* context, the Court then asks whether there are any special factors that counsel hesitation about granting the extension. *Egbert*, 596 U.S. at 492. In applying the second factor, a district court "faces only one question: whether there is *any* rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a

4

damages action to proceed." *Id.* at 496 (cleaned up). Additionally, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Id.* at 493 (quoting *Ziglar,* 582 U.S. at 137).   This is true even if the individual plaintiff alleges he does not have access to the alternative remedy. *Id.* at 498 ("[W]hether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts.").

**B. Application of *Ziglar* and *Egbert* to Mr. Marshall's Eighth Amendment Claims**

Lt. Cheatham argues that Mr. Marshall's claims arise in a context meaningfully different from *Carlson* and that there are special factors that counsel against expanding *Bivens* to this case. Dkt. 31 at 4. The Court must first determine whether Mr. Marshall's claim arises in a new context. In doing so, the Court compares the allegations and claims in this complaint to those in *Carlson* and in two post-*Egbert* Seventh Circuit cases.

In *Carlson,* the administrator of an estate brought Eighth Amendment deliberate indifference claims against "federal prison officials" at the Federal Correction Center in Terre Haute, alleging that they failed to appreciate the seriousness of an inmate's asthma, kept him at the prison against the advice of doctors, delayed in giving him appropriate care for his treatment after an asthma attack, provided inappropriate medication, tried to use a broken respirator, and delayed his transfer to a hospital, resulting in his death. 466 U.S. at 16, n.1.

Recently, in *Brooks v. Richardson,* the Seventh Circuit analyzed whether a federal prisoner's medical claim presented a new context. The court allowed a

claim of medical deliberate indifference to proceed when medical personnel mistook appendicitis for constipation and COVID-19, declined to send plaintiff to a hospital for evaluation and treatment for 10 days, and his appendix ruptured and peritonitis ensued. *Id.* The Seventh Circuit found that *Carlson* applied to the claims because, like the inmate in *Carlson*, Brooks "asserted that a federal prison's staff provided constitutionally deficient medical care." *Id.* at 615. Similarly, in *Watkins v. Moran*, the court found that a plaintiff's claims regarding inadequate post-surgery care was not a new context. *Watkins*, 144 F.4th at 934. In both *Brooks* and *Watkins*, the court emphasized that the "new context" inquiry merely examines the types of claims presented, and claims involving inadequate medical care for prisoners are not meaningfully different from *Carlson*. *Brooks*, 131 F.4th at 615–16 (facts related to resource constraints "seems to us a defense on the merits rather than a potentially different context"); *Watkins*, 144 F.4th at 935–36 (claim was not meaningfully different only because *Carlson* dealt with emergency care whereas *Watkins* concerned post-surgery care).

Lt. Cheatham offers two reasons why the claims against her present a new context. First, she is not a medical provider. Dkt. 31 at 5. But this does not distinguish her from the defendants in *Carlson*, one of whom was the director of the BOP. *Brooks*, 131 F.4th at 615. *Carlson* does not mandate that the named defendant must be medical staff rather than correctional staff. Correctional staff can be deliberately indifferent if they fail to obtain medical care when a prisoner is in obvious pain, thereby causing a delay in treatment. *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 941 (7th Cir. 2015) ("If a prisoner is writhing in agony,

the guard cannot ignore him on the ground of not being a doctor; he has to make an effort to find a doctor . . . [or] some medical professional.") (emphasis removed); *see also Farmer v. Brennan*, 511 U.S. 825, 829 (1994) (transgender inmate suing prison staff for failure to protect); *Watkins*, 144 F.4th at 937 (noting that courts can look at cases involving health care for prisoners in state prisons and county jails for guidance on the deliberate indifference analysis in a *Bivens* case).

Second, Lt. Cheatham argues that Mr. Marshall does not allege that Lt. Cheatham was personally engaged in constitutionally deficient medical care. Dkt. 31 at 5. But Mr. Marshall alleges that Lt. Cheatham and others on her unit failed to promptly escort him to medical to be evaluated following the use-of-force incident. Dkt. 12 at 6. So, Lt. Cheatham's argument goes to the merits of Mr. Marshall's underlying deliberate indifference claim rather than to whether Mr. Marshall can bring a claim against her. *Brooks*, 131 F.4th at 615–16.

Accordingly, the Court concludes that Mr. Marshall's medical deliberate indifference claim against Lt. Cheatham does not present a new context.[2] The motion to dismiss is therefore **denied**.

### IV.    Motion for Counsel

Mr. Marshall has filed a renewed motion for assistance recruiting counsel. Dkt. 37. Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Walker v. Price*, 900 F.3d 933, 938

---

[2] For this reason, the Court does not address Lt. Cheatham's additional argument that special factors counsel against expanding *Bivens* to this case. *See* dkt. 31 at 6–9.

(7th Cir. 2018). Instead, 28 U.S.C. § 1915(e)(1) gives courts the authority to "request" counsel for those who cannot afford it. *Mallard v. United States District Court*, 490 U.S. 296, 301 (1989). As a practical matter, there are not enough lawyers willing and qualified to accept a pro bono assignment in every pro se case. *See Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022) (explaining that courts must be careful stewards of the limited resource of volunteer lawyers). "Two questions guide this court's discretionary decision whether to recruit counsel: (1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Walker*, 900 F.3d at 938 (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). The first inquiry—whether an indigent litigant reasonably attempted to get a lawyer—"is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021).

Here, though Mr. Marshall did not apply for *in forma pauperis* status, his provided trust account information suggests that he is unable to afford private counsel at this time, dkt. 37-1 at 7–16, and he has demonstrated a reasonable attempt to obtain representation, *id.* at 1–6 (listing contacted attorneys). Second, Mr. Marshall has explained that he has Alzheimer's disease, dementia, and suffers from mental health disorders. Dkt. 37 at 3. Mr. Marshall was placed into a skills program in the BOP, a program for "slow functioning inmates and those with mental health diagnosis." *Id.* Mr. Marshall further explained that he has

difficulty reading and writing and has had help from other inmates to prepare all of his filings. *Id.* at 2–3. His complaint brings both a *Bivens* claim against Lt. Cheatham and a FTCA claim against the United States regarding an allegation of assault, battery, and negligence at FCI-Terre Haute. Mr. Marshall has been moved to the U.S. Penitentiary in Coleman, Florida, which undoubtedly would present challenges for Mr. Marshall to be able to competently litigate his case. The Court therefore **GRANTS** Mr. Marshall's motion for counsel, dkt. [37], and will attempt to recruit counsel to represent him through final judgment.

## V.    Conclusion

Lt. Cheatham's motion to dismiss, dkt. [30], is **denied**.

Mr. Marshall's motion for assistance recruiting counsel, dkt. [37], is **granted** and the Court will attempt to recruit counsel to represent him through final judgment. Mr. Marshall's motion for case status, dkt. [38], is **granted to the extent** that the Court now issues this Order.

**SO ORDERED.**

Date: 3/31/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

BRIAN K. MARSHALL
15188-010
COLEMAN - MEDIUM FCI
COLEMAN MEDIUM FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 1032
COLEMAN, FL 33521

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov

9